JEAN E. WILLIAMS
Deputy Assistant Attorney General
MICHELLE-ANN C. WILLIAMS
Trial Attorney (MD Bar)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0420
Fax: (202) 305-0506
Email: michelle-ann.williams@usdoj.gov

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>　　　　　　　　Defendant,<br><br>and<br><br>IONEER USA CORPORATION,<br><br>　　　　　　　　Defendant-Intervenor. | Case No.:  2:19-cv-01915-GMN-EJY<br><br>**FEDERAL DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

LEGAL BACKGROUND ................................................................................................. 2

    I.      Mining Law of 1872 ........................................................................................ 2

    II.     National Environmental Policy Act ................................................................. 2

    III.    Federal Land Policy and Management Act ..................................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 4

STANDARD OF REVIEW ............................................................................................... 5

    I.      Standard for Obtaining Preliminary Injunctive Relief .................................... 5

ARGUMENT ..................................................................................................................... 6

    I.      Plaintiff Is Unlikely To Succeed On The Merits Because Its Claims Are Moot ................................................................................................................. 7

           A.     Viable Relief Is Necessary For A Case Or Controversy ............................. 7

           B.     The "Voluntary Cessation" Exception Does Not Apply ............................. 9

    II.     Plaintiff Has Not Proven That It Is Likely To Suffer Irreparable Harm ............... 10

    III.    The Balance of Harms And The Public Interest Do Not Support Plaintiff's Request For Emergency Relief ..................................................................... 13

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Cases

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) .................................................................................................................... 7

*Alvarez v. Smith*,
   558 U.S. 87 (2009) ................................................................................................................. 7, 8

*Am. Trucking Ass'ns v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ................................................................................................... 6

*Amylin Pharms., Inc. v. Eli Lilly & Co.*,
   456 F. App'x 676 (9th Cir. 2011) ............................................................................................ 11

*Brady Campaign to Prevent Gun Violence v. Salazar*,
   612 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................................. 13

*Caribbean Marine Servs. Co., Inc v. Baldrige*,
   844 F.2d 668 (9th Cir.1988) .................................................................................................... 11

*Ctr. for Biological Diversity v. Lohn*,
   511 F.3d 960 (9th Cir. 2007) ................................................................................................. 8, 9

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .................................................................................................................. 7

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2004) ................................................................................................. 13

*Earth Island Inst. v. Elliott*,
   290 F. Supp. 3d 1102 (E.D. Cal. 2017) ................................................................................... 13

*Earth Island Inst. v. United States Forest Serv.*,
   442 F.3d 1147 (9th Cir. 2006) ................................................................................................... 8

*FTC v. Affordable Media, LLC*,
   179 F.3d 1228 (9th Cir. 1999) ................................................................................................. 10

*Fund for Animals, Inc. v. Lujan*,
   962 F.2d 1391 (9th Cir. 1992) ................................................................................................. 13

*Gardner v. BLM*,
   638 F.3d 1217 (9th Cir. 2011) ................................................................................................... 3

*Humane Soc'y of the United States v. Jewell*,
   76 F. Supp. 3d 69 (D.D.C. 2014) ............................................................................................ 11

*Lindquist v. Idaho State Bd. of Corrections*,
   776 F.2d 851 (9th Cir. 1985) ................................................................................................... 10

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989)..................................................................................................... 3

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997)..................................................................................................... 6

*Mineral Pol'y Ctr. v. Norton*,
   292 F. Supp. 2d. 30 (D.D.C. 2003).......................................................................... 3, 4

*Munaf v. Geren*,
   553 U.S. 674 (2008)..................................................................................................... 6

*Murphy v. Hunt*,
   455 U.S. 478 (1982)..................................................................................................... 8

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
   762 F.2d 1374 (9th Cir. 1985) .................................................................................. 12

*Pathfinder Mines Corp. v. Hodel*,
   811 F.2d 1288 (9th Cir. 1987) .................................................................................... 2

*Robertson v. Methow Valley Citizens Council*,
   490 U.S. 332 (1989)..................................................................................................... 2

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014) .................................................................................... 10

*Save the Yak Comm. v. Block*,
   840 F.2d 714 (9th Cir. 1988) .................................................................................... 13

*the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) .................................................................................... 6

*United States v. Strong*,
   489 F.3d 1055 (9th Cir. 2007) .................................................................................... 8

*W. Watersheds Proj. v. Kraayenbrink*,
   632 F.3d 472 (9th Cir. 2011) ...................................................................................... 2

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)................................................................................................ 6, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).................................................................................................. 6, 11

Statutes

30 U.S.C. §§ 22-54 ............................................................................................................ 2

42 U.S.C. § 4321................................................................................................................ 3

43 U.S.C. § 1701(7) ......................................................................................................... 14

43 U.S.C. § 1732(b).......................................................................................................... 3

43 U.S.C. §§ 1701-1787 ............................................................................................................ 3

43 U.S.C. § 1702(c) .................................................................................................................... 3

Regulations

40 C.F.R. § 1501.1(c) .................................................................................................................. 3

43 C.F.R § 3809.332 ................................................................................................................... 9

43 C.F.R. § 3809.10 .................................................................................................................... 4

43 C.F.R. § 3809.2(a) .................................................................................................................. 4

43 C.F.R. § 3809.336 .................................................................................................................. 9

43 C.F.R. § 3809.5 .................................................................................................................. 3, 9

43 C.F.R. Part 3809 .................................................................................................................... 3

# INTRODUCTION

The Motion for Preliminary Injunction filed by Plaintiff should be denied because Plaintiff's claims are moot and Plaintiff cannot make the requisite showing of imminent harm. Plaintiff seeks to enjoin mineral exploration operations in the Rhyolite Ridge Exploration Area and South Infill Exploration Area, on public lands managed by the Bureau of Land Management ("BLM") in Esmeralda County, Nevada. Plaintiff claims that BLM authorized the exploration operations in violation of the Federal Land Policy and Management Act ("FLPMA") and the National Environmental Policy Act ("NEPA"), and seeks preliminary injunctive relief to "preserve the status quo and prevent any additional irreparable harm to . . . the Tiehm's buckwheat . . . while the instant case is heard and resolved on the merits." ECF No. 10, 1.

Plaintiff's motion fails because its request for injunctive relief is moot. Plaintiff's motion is moot because all exploration operations in the Rhyolite Ridge Exploration Area and South Infill Exploration Area have ceased, and BLM has terminated the notices under which those exploration operations were conducted and prohibited further surface disturbance and mining-related activities in the notice areas. As such, Plaintiff is unable to demonstrate a likelihood of imminent irreparable harm to the Tiehm's buckwheat, a species that has no special protection under state or federal law, or show that it is likely to overcome the threshold issue of mootness and succeed on the merits of the claims raised in its complaint and argued in its motion. Moreover, because Plaintiff has failed to demonstrate any likelihood of imminent irreparable harm and because injunctive relief would interfere with BLM's mandate to manage public lands in accordance with the goals and policies of FLPMA and its implementing regulations, the balance of equities and public interest weigh against the grant of injunctive relief.

1

For these reasons and others discussed below, the Court should deny Plaintiff's motion.

LEGAL BACKGROUND

I. **Mining Law of 1872**

The Mining Law of 1872, 30 U.S.C. §§ 22-54, made federal lands "free and open" to mineral exploration. *See* 30 U.S.C.§ 22. It provides an open invitation to self-initiated exploration and related occupation for mining purposes that extends to all federal lands where the minerals are reserved to the United States and have not been expressly reserved or withdrawn from the operation of the Mining Law. *See Pathfinder Mines Corp. v. Hodel*, 811 F.2d 1288 (9th Cir. 1987). Any use or occupancy of federal lands reasonably incident to mining operations under the Mining Law must comply with federal regulations, and state, territorial, and local regulations that do not conflict with federal law. *See* 30 U.S.C. §§ 22, 612(a) (authorizing use for "prospecting, mining or processing operations and uses reasonably incident thereto").

II. **National Environmental Policy Act**

NEPA serves the dual purpose of informing agency decision makers of the environmental effects of proposed federal actions, so that "important effects will not be overlooked or underestimated," and ensuring that relevant information is made available to the public so that they "may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349 (1989); *see also W. Watersheds Proj. v. Kraayenbrink*, 632 F.3d 472, 487 (9th Cir. 2011) (noting dual purposes). NEPA's intent is to focus the attention of agencies and the public on a proposed action so that its consequences may be studied before implementation. 42 U.S.C. § 4321; 40 C.F.R. § 1501.1(c); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989).

**III.    Federal Land Policy and Management Act**

In 1976, Congress enacted FLPMA, 43 U.S.C. §§ 1701-1787, creating a "broad statutory framework" that sets forth "the goals and management requirements that [Congress] envisioned for public lands." *Gardner v. BLM*, 638 F.3d 1217, 1222 (9th Cir. 2011). FLPMA generally requires the Secretary of the Interior to manage public lands under "principles of multiple use," which includes the use of public lands for its renewable and non-renewable resources such as forage, timber, and minerals; for recreation; and for the preservation of natural values including wildlife, wildlife habitat, and scenic values. *See* 43 U.S.C. §§ 1702(c), 1732(a).

As for managing resources subject to the Mining Law on public lands, however, FLPMA amended the Mining Law in the four discrete ways described in 43 U.S.C. § 1732(b). Among these is the requirement that BLM "by regulation or otherwise, [must] take any action necessary to prevent unnecessary or undue degradation of [public] lands." *Id.* Accordingly, BLM promulgated regulations—43 C.F.R. Part 3809—to ensure that mining operations conducted pursuant to the Mining Law would not cause unnecessary or undue degradation of public lands. *See* 43 C.F.R. § 3809.5;[1] *see also Mineral Pol'y Ctr. v. Norton*, 292 F. Supp. 2d. 30, 35-36 (D.D.C. 2003) (discussing regulatory history of FLPMA's amendment of the Mining Law, and the regulatory

---

[1] 43 C.F.R. § 3809.5 defines unnecessary or undue degradation as: "conditions, activities or practices that: (1) [f]ail to comply with one or more of the following: the performance standards in § 3809.420, the terms and conditions of an approved plan of operations, operations described in a complete notice, and other Federal and state laws related to environmental protection and protection of cultural resources; (2) [a]re not 'reasonably incident' to prospecting, mining, or processing operations as defined in § 3715.0-5 of this chapter; or (3) [f]ail to attain a stated level of protection or reclamation required by specific laws in areas such as the California Desert Conservation Area, Wild and Scenic Rivers, BLM-administered portions of the National Wilderness System, and BLM-administered National Monuments and National Conservation Areas."

definition of "unnecessary or undue degradation"). These regulations apply to "all operations authorized by the mining laws on public lands where the mineral interest is reserved to the United States[,]" and "operations that involve locatable minerals[.]" 43 C.F.R. § 3809.2(a), (e). The regulations identify three distinct classes of operations: (1) "casual use," under which an operator may cause only negligible surface disturbance; (2) "notice-level operations," under which an operator may only conduct exploration (not full-scale mining) operations, and may only disturb up to five acres of certain lands, provided that it first submits a complete exploration notice to BLM; and (3) "plan-level operations," under which an operator may conduct all other operations, including exploration disturbing more than five acres, provided that it submits a mining plan of operations and obtains BLM's approval. *See* 43 C.F.R. § 3809.10; *see also Mineral Pol'y Ctr*, 292 F. Supp. 2d at 36 (discussing how BLM classifies operations).

## FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2018, Paradigm Minerals USA Corporation and its successor Ioneer USA Corporation (collectively "mining company"), submitted to BLM's Tonopah Field Office a "notice for exploration activities planned at the Rhyolite Ridge Exploration Project" ("Rhyolite Notice"). *See* Ex. 1, Attach. A. The planned surface disturbance totaled 3.81 acres. *Id.* On September 21, 2018, the mining company submitted a new revised notice for the Rhyolite Ridge Exploration Project, which "adjust[ed] locations of planned disturbance in order to avoid impacting cultural resources" and stated a planned surface disturbance of 3.96 acres. *See* Ex. 1, Attach. B. On October 10, 2018, BLM informed the mining company of the amount of the financial guarantee required to ensure reclamation. *See* Ex. 1, Attach. C.

On October 1, 2018, the mining company submitted to BLM a "notice for exploration activities proposed at the South Infill Exploration Project" ("South Infill Notice"). *See* Ex. 1, Attach. F. The exploration notice identified a planned surface disturbance of 4.46 acres. On October 17, 2018, BLM informed the mining company of the amount of the financial guarantee required to ensure reclamation. *See* Ex. 1, Attach. G.  BLM also noted that "[n]o known [threatened and endangered] plant species," were located in the project area, but that "Tiehm's buckwheat . . . a BLM Sensitive Plant Species may be found in this area." *Id*. The mining company subsequently commenced exploration operations in the Rhyolite and South Infill notice areas.

On October 29, 2019, Plaintiff sent a letter to the BLM State Director, requesting that BLM order the mining company to "cease and desist exploration activities conducted under the [Rhyolite and South Infill Notices]" because of a purported threat to the Tiehm's buckwheat from mineral exploration. *See* Ex. 2. On October 30, 2019, Plaintiff filed suit in federal district court, alleging that BLM violated NEPA and FLPMA, *see* ECF No. 1, and on November 5, 2019, Plaintiff filed a motion for a preliminary injunction, *see* ECF No. 10.

On December 5, 2019, the mining company notified BLM that it had ceased all exploration operations under the notices. *See* Ex. 1, Attach. D and H. Accordingly, on December 6, 2019, BLM issued decisions accepting the mining company's relinquishment of the notices, terminating the notices, and stating that all surface disturbance and mining-related activities, except reclamation, were prohibited in the notices areas. *See* Ex. 1, Attach. E and I.

STANDARD OF REVIEW

**I.     Standard for Obtaining Preliminary Injunctive Relief**

5

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). To obtain a preliminary injunction, a plaintiff must, at a minimum, demonstrate four elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of an injunction, (3) that "the balance of equities tips in his favor," and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party *must* demonstrate a "likelihood of success on the merits" in order to obtain a preliminary injunction. *Munaf v. Geren*, 553 U.S. 674, 690 (2008) (citation omitted). Furthermore, a party seeking preliminary injunctive relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (rejecting a "possibility" of irreparable harm standard); *see also Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.") (footnote omitted). The Ninth Circuit has held that, notwithstanding the *Winter* decision, a preliminary injunction may issue if the plaintiffs can show "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation omitted).

## ARGUMENT

The Court should deny Plaintiff's request for a preliminary injunction because Plaintiff's case is unlikely to succeed on the merits because its claims are moot and Plaintiff is unable to demonstrate a likelihood of imminent irreparable harm or that the public interest and the balance of equities tip sharply in its favor.

## I. Plaintiff Is Unlikely To Succeed On The Merits Because Its Claims Are Moot

Plaintiff's claims are unlikely to succeed on the merits because they have been rendered moot by BLM's decisions terminating the notices. Plaintiff's complaint requests that the Court vacate the notices, *see* ECF No. 1, 15-19, and its motion for preliminary injunctive relief seeks to "preserve the status quo and prevent any additional irreparable harm" to the Tiehm's buckwheat, a plant species with no recognized protection under state or federal law, from "ongoing mining exploration activities" while this case is pending before the Court, *see* ECF No. 10, 1. But Plaintiff is ineligible for injunctive relief because BLM has terminated the notices under which exploration operations were being conducted, thus precluding any further exploration activities in the notice areas. *See* Ex. 1, Attach. E and I. Plaintiff's claims are thus unlikely to succeed on the merits on grounds of mootness because it cannot obtain relief from the Court, and the possibility of viable relief is necessary for a valid case or controversy.

### A. Viable Relief Is Necessary For A Case Or Controversy

Article III of the Constitution grants the Judicial Branch authority to adjudicate "cases" and "controversies," and courts may not "decid[e] legal disputes or expound[] on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). "[A]n 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Id.* at 90–91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)). A case becomes moot—and therefore no longer a "case" or "controversy" for purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)); *see also Earth Island Inst. v. United*

7

*States Forest Serv.*, 442 F.3d 1147, 1157 (9th Cir. 2006) *abrogated on other grounds by Winter*, 555 U.S. 7. Whether a case is moot is a threshold issue to be resolved before a court concludes that a plaintiff's case should proceed on the merits. *See United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007).

Here, in its complaint and motion for preliminary injunction, Plaintiff requested that the Court prevent any further exploration activities pursuant to the notices, including while the litigation is pending. *See* ECF No. 10; *see also* ECF No. 1, 15-19 (complaint requesting vacatur of the notices). Putting aside Plaintiff's various arguments on the merits, the Court is unable to grant effective relief to Plaintiff because the mining company has relinquished and BLM has terminated the challenged notices, rendering them of no effect. *See* ECF No. 1, 15-19; *see also* Ex. 1, Attach. E and I. Because the notices have been terminated, no further surface disturbance and exploration related activities may be conducted by the mining company pursuant to those notices. *See id.*; *see also* Ex. 1, Attach. D and H (stating that the company has ceased operations in the notice areas).

As a result of the termination of the notices, there is no live controversy for the Court to contend with and no other relief that the Court could grant to remedy Plaintiff's complaint about the legality of the two notices and purported harm from their implementation. *See* ECF No. 1. To the extent Plaintiff argues that the Court could award declaratory relief as requested in its complaint, a declaratory judgment would serve no purpose in this case, and, as such, would constitute an improper advisory opinion. *See Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007). Indeed, "[u]nless an actual controversy exists, the Court is without power to grant declaratory relief." *AAA Nev. Ins. Co. v. Vinh Chau*, No. 2:08-cv-00827-RCJ-LRL, 2010 U.S. Dist. LEXIS 51258, *7 (D. Nev. Apr. 30, 2010).

8

Insofar as Plaintiff argues that injunctive relief is still warranted because reclamation work in the former notice areas remains to be completed, Plaintiff's argument is without merit. As an initial matter, exploration and reclamation are distinct activities invoking separate regulatory provisions and processes. *See* 43 C.F.R. §3809.5 (defining exploration and reclamation). Next, the conduct of reclamation activities is not contingent upon the existence of an active notice. All exploration operations, whether pursuant to a notice or plan of operations, must be followed by reclamation of the project area. *See, e.g.*, *id.* §§ 3809.332, .334(b)(2), .335(b), .336(b), .401(b)(3), .424(b). The regulations do not provide for any exceptions to the reclamation obligation, requiring reclamation even where exploration operations have temporarily stopped for an extended period of time, notices have expired, notice level operations have been abandoned, or operations have otherwise ceased. *See id*. Moreover, BLM itself has general enforcement authority to ensure that reclamation is completed, regardless of a notice's status. *See, e.g.*, *id.* § 3809.336 (noting that in the case of abandonment of notice-level operations, BLM itself may complete reclamation and bill the cost of the reclamation to the responsible entity). Any argument by Plaintiff therefore, that the mining company's reclamation obligations somehow suggest that the notices are still operational, would be unsupported by the regulations.

Because Plaintiff's case is moot, the Court would have no cause to address Plaintiff's arguments on the merits, and, as such, Plaintiff is unlikely to succeed on the merits of its claims.

**B. The "Voluntary Cessation" Exception Does Not Apply**

To the extent Plaintiff argues that its claims for relief from the notices are not moot because the voluntary cessation exceptions applies, the Court should reject this argument. "As a general rule[,] . . . voluntary cessation of allegedly illegal conduct does not make a case moot[.] But a case may become moot if '(1) it can be said with assurance that 'there is no reasonable expectation . .

9

.' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 854 (9th Cir. 1985) (internal citations omitted); *see also FTC v. Affordable Media*, LLC, 179 F.3d 1228, 1237-38 (9th Cir. 1999). Here, there is no support for the contention that the purported violation—that is, the "approval" of exploration operations in the notices areas in contravention of NEPA and FLPMA and to the detriment of the Tiehm's buckwheat—is likely to recur. The mining company's exploration notices have been terminated, thus precluding any exploration operations in the project areas, and any future proposal to conduct exploration or mining operations in the Rhyolite and South Infill project areas, would be reviewed on its own merit based on the requirements of the Part 3809. Moreover, any future conduct, action, or decision by the agency in response to a proposal to conduct exploration operations would be entitled to a presumption of regularity. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014). And it would be highly speculative to, at this point, predict how the agency would respond to a future proposal such that a determination could be made that the purportedly unlawful conduct at issue here is reasonably expected to recur. The voluntary cessation exception is thus inapplicable.

**II.   Plaintiff Has Not Proven That It Is Likely To Suffer Irreparable Harm**

"To support injunctive relief, harm must not only be irreparable, it must be imminent; establishing a threat of irreparable harm in the indefinite future is not enough. Rather, 'a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 679 (9th Cir. 2011) (citing *Caribbean Marine Servs. Co., Inc v. Baldrige*, 844 F.2d 668, 674 (9th Cir.1988)); *see also Winter*, 555 U.S. at 22 (stating that Plaintiffs seeking a preliminary injunction must make a clear showing that

irreparable injury is likely in the absence of their requested injunction). Here, Plaintiff argues that exploration activities covered by the Rhyolite and South Infill notices will result in imminent irreparable harm to the Tiehm's buckwheat and its habitat. *See* ECF No. 10, 26-28. Plaintiff further contends that the irreparable harm flows directly from BLM's purported failure to require the submission of a plan of operations that would be subject to NEPA analysis of the impacts from the mineral exploration. *Id.* at 28. Plaintiff's contentions, however, are without merit.

As an initial matter and contrary to Plaintiff's assertions, the Tiehm's buckwheat has no special status,[2] as either a threatened or endangered species,[3] under federal or state law, that would require protection by the Court. *See* ECF No. 10, 19 (stating that "harm to individual members of an endangered species is also considered irreparable"). And Plaintiff has failed to cite to any authority that the Tiehm's buckwheat is entitled to any legal protection, or that Plaintiff's petition to list the Tiehm's buckwheat automatically grants the species heightened, special protection under the Endangered Species Act or any other law. *See, e.g.*, *Humane Soc'y of the United States v. Jewell*, 76 F. Supp. 3d 69, 111 (D.D.C. 2014) (stating that "[u]nless and until a species of organisms is

---

[2] While BLM acknowledges that it has designated the Tiehm's buckwheat as a sensitive species for land use planning purposes, *see* BLM Handbook on Special Status Species Management, 6840.06, this policy is not enforceable and thus cannot serve as a basis for Plaintiff's claims. *See* <u>United States v. Fifty-Three Eclectus Parrots</u>, 685 F.2d 1131, 1136 (9th Cir. 1982) (stating the Ninth Circuit's long held position that, "[t]o have the force and effect of law enforceable against an agency in federal court, [an] agency pronouncement must (1) prescribe substantive rules – not interpretive rules, general statements of policy[,] or rules of agency organization, procedure or practice – and; (2) conform to certain procedural requirements," i.e., the procedural requirements in 5 U.S.C. § 553 that apply to substantive rules); <u>accord</u> <u>Lowry v. Barnhart</u>, 329 F.3d 1019, 1022 (9th Cir. 2003); <u>United States v. Alameda Gateway Ltd.</u>, 213 F.3d 1161,1168 (9th Cir. 2000); *see also* 43 C.F.R. § 3809.420(b)(7) (requiring operators to avoid adverse effects to species that are listed as threatened or endangered, not merely identified by BLM as "sensitive").

[3] Plaintiff claims that the Nevada Plant Society has identified the Tiehm's buckwheat as a threatened species. *See* ECF No. 10, 19 n.1. This assertion should not be accorded any weight since the Nevada Plant Society is neither a state nor federal regulatory agency.

designated an 'endangered species' or a 'threatened species,' the enforcement mechanisms under the ESA, including preemptive limits on State action and requirements for Federal action, do not apply").

Moreover, Plaintiff is unable to sustain a claim of imminent harm to the Tiehm's buckwheat. Plaintiff claims that BLM "authorized operations in *October 19, 2018*," for the Rhyolite and South Infill project areas, *see* ECF No 1, ¶¶ 46, 54 (emphasis added), and that as early as *June 1, 2019*, Plaintiff "visited the Rhyolite Ridge Project Area . . . and observed impacts from mineral exploration activities . . . within meta-populations of the buckwheat," ECF No. 1, ¶ 71 (emphasis added). Yet Plaintiff waited to seek injunctive relief until months later in November 2019. Plaintiff's appreciable delay in seeking injunctive relief thus belies its contention of imminent irreparable harm. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (stating that "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *see also iFreedom Direct Corp. v. McCormick*, No. SACV-16-470-JLS, 2016 U.S. Dist. LEXIS 192173, *10-11 (C.D. Cal. June 15, 2016) (noting that delays as short as three months in seeking preliminary injunctive relief can undermine a plaintiff's claim of irreparable injury) (internal citations omitted).

Furthermore, Plaintiff's claim of imminent harm to the Tiehm's buckwheat is moot. Plaintiff cannot establish a likelihood of imminent harm to the Tiehm's buckwheat because the mining company has ceased exploration operations in the notice areas and BLM has terminated the notices. *See* Ex. 1, Attach. E and I. BLM's decision terminating the notices prohibits in the notice areas all surface disturbance and mining related activities described in the notices, excepting reclamation work, thus removing any risk of harm to the buckwheat and mooting Plaintiff's request for injunctive relief to prevent "additional irreparable harm." *See supra* Argument, Part I.A.

To the extent Plaintiff suggests it would suffer procedural harm as a result of any alleged NEPA or FLPMA violations thus requiring injunctive relief, Plaintiff's argument is untenable. There is no "presumption of irreparable injury when an agency fails to thoroughly evaluate the environmental impact of a proposed action." *Save the Yak Comm. v. Block*, 840 F.2d 714, 722 (9th Cir. 1988) (internal citation omitted). And "[m]erely establishing a procedural violation of NEPA does not compel the issuance of a preliminary injunction." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992); *see also Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 24 (D.D.C. 2009) (same). Thus even if the Court determined that the agency violated NEPA or FLPMA, injunctive relief would not be the appropriate remedy. Plaintiff's assertion of procedural harm because BLM purportedly failed to require a plan of operations is also moot because all exploration activities for which a plan of operations could have been required have been terminated. Accordingly, Plaintiff has failed to discharge its burden of showing that it will suffer imminent irreparable harm in the absence of preliminary injunctive relief.

### III. The Balance of Harms And The Public Interest Do Not Support Plaintiff's Request For Emergency Relief

"[T]he analyses of the public interest and balance of equities merge when the government is a party[.]" *Earth Island Inst. v. Elliott*, 290 F. Supp. 3d 1102, 1125 (E.D. Cal. 2017) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2004). "[When] an injunction is asked [for] which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger*, 456 U.S. at 312-13 (citation omitted). Thus, a court may deny injunctive relief even when a plaintiff has demonstrated a likelihood of success on the merits and that it would suffer immediate irreparable harm, neither of which are true in this case.

13

Plaintiff posits that the balance of harms and the public interest weigh in favor of injunctive relief, particularly in consideration of the alleged irreparable harm to Plaintiff and the Tiehm's buckwheat. ECF No. 10, 28-29. Plaintiff's argument however, rings hollow. As discussed above, *supra* Argument Part I and II, Plaintiff's claim of imminent irreparable harm is moot because the mining company has ceased exploration operations in the notice areas and BLM has terminated the notices, prohibiting any further exploration. Finally, the public interest disfavors the grant of injunctive relief as it would impede one of the fundamental objectives of FLPMA that "public lands be managed in a manner which recognizes the Nation's need for domestic sources of minerals. . .from the public lands". 43 U.S.C. § 1701(7), (8), (12). Accordingly, Plaintiff has not shown that the balance of the harms or the public interest are in its favor.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted this 6th day of December 2019,

        JEAN E. WILLIAMS
        Deputy Assistant Attorney General

        */s/ Michelle-Ann C. Williams*
        MICHELLE-ANN C. WILLIAMS
        Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Federal Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction was made through the Court's electronic filing

1 and notice system (CM/ECF), which caused all parted or counsel of record to be served by
2 electronic means, as fully reflected in the Notice of Electronic Filing.

3                                    */s/ Michelle-Ann C. Williams*
                                   MICHELLE-ANN C. WILLIAMS
4                                    Trial Attorney

15